# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY EPPEL and JARLATH EPPEL, <br><br>Plaintiffs,<br>vs.<br><br>COUNTY OF SAN DIEGO, DEPUTY TIMOTHY MATZKIW, RICK LA MORA, AND DOES 1-10,<br><br>Defendants. | CASE NO. 05cv1061 BTM(NLS)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants County of San Diego and Timothy Matzkiw have filed a motion for summary judgment. For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED**.

## I. FACTUAL BACKGROUND

Rick La Mora[1] and Plaintiffs Kathy and Jarlath Eppel are neighbors in Vista, California. La Mora has an ingress/egress easement over a road on Plaintiffs' private property. According to Plaintiffs, La Mora installed a post with a keypad, which controlled a gate to La Mora's property, twenty feet into the easement on Plaintiffs' land. (Jarlath Eppel Decl., Def.'s Exh. 2.) Plaintiffs declare that they never gave La Mora permission to install the

---

[1] Rick La Mora was named as a defendant in this suit but has been dismissed due to Plaintiffs' failure to serve him with the Summons and Complaint.

keypad/post, which was not necessary to ingress/egress because La Mora used a remote control to operate the gate. (Id.)  Plaintiffs asked La Mora on a number of occasions to relocate the keypad/post to his property, but he never did.  (Def.'s Exh. 1.)

In 2003, Mrs. Eppel became more insistent about La Mora removing the keypad/post because the Eppels planned to make some renovations to their property and wanted to make sure that there were no obstacles in the way of contractors.  (Def.'s Exh. 1.)  According to Plaintiffs, La Mora initially agreed to remove the keypad/post.  (Id.)  However, La Mora became reluctant to remove the keypad/post due to the expense involved and told the Eppels on several occasions that they could remove the keypad/post themselves and just throw it away since it did not work anyway.  (Id.)

Mrs. Eppel consulted several attorneys who advised her that she could lawfully remove the keypad/post since it was erected on their property without their permission. (Kathy Eppel Decl.)  Mrs. Eppel also called automatic gate companies to learn how to remove the keypad/post without causing damage to the pavement or the keypad.  (Id.)  On April 4, 2004, Mr. Eppel removed the keypad/post as instructed by the automatic gate companies and placed it at La Mora's property line.  (Def.'s Exh. 2.)

That evening, Karen La Mora arrived home and noticed that the gate was wide open and that the keypad/post was missing.  (Def.'s Exh. 4.)  Concerned that there might be a burglary in progress, Karen La Mora called 911.  (Id.)  Sheriff's deputies arrived in response to the call.

According to the crime/incident report prepared by Deputy Matzkiw, Mrs. Eppel told him that she had cut the metal post with a reciprocating saw earlier that day. (Def.'s Exh. 4.) She said that an attorney told her that she could remove the keypad/post because it was on her *easement* and that La Mora had given her permission to take the keypad/post down. Deputy Matzkiw then spoke with La Mora, who denied ever giving permission for the removal of the keypad/post.  La Mora said that he had spoken with Jarlath Eppel three days ago and told him that the keypad/post could not be removed because the Vista Fire Department had informed La Mora that they needed access to his residence via the gate transmitter.  La Mora

estimated the damage to the transmitter to be about $1,000 and insisted that Mrs. Eppel be prosecuted.

Mrs. Eppel has a different version of the events that night. According to Mrs. Eppel, during her initial conversation with Matzkiw, she explained that the keypad/post had been placed on the Eppels' property without their permission. (Def.'s Exh. 1.) Later, when Matzkiw returned from the La Mora residence to tell her that the La Moras were demanding her arrest, Matzkiw asked Mrs. Eppel if she had any papers to prove the keypad was on the Eppels' property. Mrs. Eppel tried to show Matzkiw several documents showing the Eppels' property boundaries and their obligations regarding the easement. However, Matzkiw would not look at the papers and continued to refer to the Eppels' private road as a "public road."

The La Moras continued to insist that Mrs. Eppel be arrested. When Mr. Eppel learned that Mrs. Eppel was going to be arrested, he told Matzkiw for the first time that he, not she, was the one who had cut the post and removed the keypad. (Def.'s Exh. 2.) Matzkiw responded that Mrs. Eppel had already admitted to cutting the post down and that she was the one going to jail. (Id.)

Matzkiw arrested Kathy Eppel, who was booked, released, and subsequently charged with felony vandalism (Cal. Penal Code § 594(a)(b)(1)). Several months later, Mr. Eppel was charged with misdemeanor vandalism, and an amended complaint was filed against Mrs. Eppel, adding an additional charge for delaying or obstructing Matzkiw's investigation. (Def.'s Exhs. 6, 9.) Mr. Eppel was never arrested. Instead, he entered his appearance via a fax arraignment. (Def.'s Exh. 7.)

The criminal cases against Mr. and Mrs. Eppel were consolidated and then were ultimately dismissed in exchange for an agreement by the Eppels to pay restitution to Mr. La Mora for the damaged keypad/post and a stipulation that Matzkiw had probable cause to arrest Mrs. Eppel. (Def.'s Exhs. 10-11.) Subsequently, the Eppels brought a motion for a finding of factual innocence pursuant to Cal. Penal Code § 851.8(c), which was granted.

## II. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

A.  False Arrest

Matzkiw moves for summary judgment against Plaintiffs on the following causes of action: false arrest under 42 U.S.C. § 1983, false arrest under California law, negligence,

1  and violation of Cal. Civil Code § 52.1. Matzkiw contends that he is entitled to summary
2  judgment on these claims because he did not arrest Mr. Eppel and had probable cause to
3  arrest Mrs. Eppel.
4      Plaintiffs do not dispute that Mr. Eppel was never arrested.  Therefore, the Court
5  grants summary judgment in favor of Matzkiw on Mr. Eppel's § 1983 claim for false arrest,
6  state claim for false arrest, negligence claim, and claim for violation of Cal. Civil Code § 52.1,
7  all of which are premised on false arrest.
8      The Court also grants summary judgment on Mrs. Eppel's claims because the
9  evidence establishes that Matzkiw had probable cause to arrest Mrs. Eppel.  In reaching this
10 decision, the Court does not rely on the stipulation to probable cause.[2]
11     Probable cause exists when "the facts and circumstances within [the officers']
12 knowledge and of which they had reasonably trustworthy information were sufficient to
13 warrant a prudent man in believing that the [plaintiff] had committed or was committing an
14 offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).  The defendant officers need only show that
15 "under the totality of the circumstances known to the arresting officers, a prudent person
16 would have concluded that there was a fair probability that [the defendant] had committed
17 a crime." United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992) (quoting United States
18 v. Potter, 895 F.2d 1231, 1233-34 (9th Cir. 1990)).
19     A person is guilty of vandalism under Cal. Penal Code § 594, if the person maliciously
20 damages any personal property not his or her own.  Matzkiw clearly had probable cause for
21 believing that Mrs. Eppel had cut down the keypad/post.  Matzkiw also had probable cause
22 to conclude that the keypad/post was the personal property of La Mora and that Mrs. Eppel

---

[2] A release-dismissal agreement whereby a criminal defendant releases his right to file a civil rights action in exchange for the dismissal of criminal charges is enforceable if the agreement was voluntary, there is no evidence of prosecutorial misconduct, and enforcement of the agreement would not adversely affect the relevant public interests.  Town of Newton v. Rumery, 480 U.S. 386, 398 (1987).  Plaintiffs have presented evidence that the stipulation to probable cause was not voluntary and is therefore unenforceable.  Accordingly, at this point in time, the stipulation does not compel a finding that Matzkiw had probable cause to arrest Mrs. Eppel.  The Court need not reach the issue of whether the stipulation may be considered as an admission under Fed. R. Evid. 801(d)(2).

did not have the right to damage such property.

California, like the majority of American states, does not recognize the ancient common law privilege to use reasonably necessary force to regain possession of land that one is entitled to possess. Daluiso v. Boone, 71 Cal. 2d 484 (1969). California's forcible entry and detainer statutes are intended "to secure a *judicial* adjustment of differences [concerning the right to possession of property] and thus prevent the parties themselves from redressing or attempting to redress their own wrongs which is likely to lead to serious wrongs against the public or society." Id. at 495 (quoting San Francisco & Suburban etc. Soc. v. Leonard, 17 Cal. App. 254, 262 (1911)).

In a similar vein, California law does not allow a landowner to resort to self-help when a good-faith improver affixes something on his land. In general, "[w]hen a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as otherwise provided in this chapter, belongs to the owner of the land . . . ." Cal. Civil Code § 1013. However, under Cal. Civil Code § 1013.5, "[w]hen any person, acting in good faith and erroneously believing because of a mistake either of law or fact that he has a right to do so, affixes improvements to the land of another, such person . . . shall have the right to remove such improvements upon payment . . . to the owner of the land . . . of all their damages proximately resulting from the affixing and removal of such improvements."

Based on the facts known to Matzkiw, Matzkiw had good reason to believe that even if the keypad/post was on the Eppels' property, La Mora was a good faith improver and continued to own the keypad/post. La Mora had an easement over the Eppels' property and could have believed that the easement gave him the right to install the keypad/post. Moreover, the keypad/post had been on the land for several years before Mr. Eppel removed it.

If La Mora was a good faith improver, the Eppels were not legally entitled to damage the keypad/post, despite the advice of the lawyer Mrs. Eppel consulted. Mr. and Mrs. Eppel told Matzkiw that La Mora had actually given them permission to take down the keypad/post. However, La Mora denied giving the Eppels permission. Given how angry La Mora was

about the damage to the keypad/post, it would have been reasonable for Matzkiw to believe La Mora over the Eppels.

Under the totality of the circumstances known to Matzkiw, a prudent person would have concluded that there was a fair probability that Mrs. Eppel had intentionally damaged personal property belonging to La Mora. Therefore, probable cause existed, and Matzkiw is entitled to summary judgment.

Even if there were a triable issue as to the existence of probable cause, Matzkiw is entitled to qualified immunity. In determining whether qualified immunity applies, the Court must first consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation is shown, the next step is to ask whether the right was "clearly established." Id. at 201-02. This inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition" — i.e., it is not sufficient to make the general argument that it is clearly established that arresting someone without probable cause violates the Fourth Amendment. Id. The proper inquiry to be made in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 2156. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 540 (1987) (internal quotation marks and citations omitted)).

It would not have been clear to a reasonable officer in Matzkiw's position that it would be unlawful to arrest Mrs. Eppel. Indeed in a California Superior Court case with facts very similar to the facts of our case, the court held that the Monterey County District Attorney had the lawful privilege to arrest the plaintiff for cutting a barbed wire fence erected by his neighbor on plaintiff's property even though surveys conducted by the county surveyor's office confirmed that the fence was well into plaintiff's property: "Given the fact that forcible

entry is unlawful, and that Holmes could have removed his barbed wire, we conclude that the barbed wire belonged to Holmes. Since Van admitted he damaged the wire, the Monterey County District Attorney had the lawful privilege to 'arrest' Van." Van v. County of Monterey, 2006 WL 1174355, *8 (Cal. App. 6 Dist. May 4, 2006).

The Court's finding that Matzkiw had probable cause to arrest Mrs. Eppel is not a finding that Matzkiw's actions were appropriate. Due to the lack of urgent circumstances and questions regarding ownership of the land and the respective rights and obligations of the parties, it would have made more sense for Matzkiw to forgo arresting Mrs. Eppel on the spot and to turn the matter over to the District Attorney's Office.  However, whether Matzkiw *should* have arrested Mrs. Eppel under the specific facts of this case is not the standard to be applied in determining whether Matzkiw violated the Fourth Amendment.[3]

As explained, by the Supreme Court, "the standard of probable cause 'applie[s] to all arrests, without the need to balance the interests and circumstances involved in particular situations.'" Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (quoting Dunaway v. New York, 442 U.S. 200, 208 (1979)). In other words, if probable cause exists, there is no false arrest in violation of the Fourth Amendment, even if the officer's actions were ill-advised or even reprehensible:

> If we were to derive a rule exclusively to address the uncontested facts of this case, Atwater might well prevail. . . . In her case, the physical incidents of arrest were merely gratuitous humiliations imposed by a police officer who was (at best) exercising extremely poor judgment. Atwater's claim to live free of pointless indignity and confinement clearly outweighs anything the City can raise against it specific to her case. But we have traditionally recognized that a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review.

Id. at 346-47.

Because Matzkiw had probable cause to arrest Mrs. Eppel, Mrs. Eppel cannot prevail

---

[3] The Court notes that this is the second case before the Court in a short period of time where officers with the Sheriff's Department have become involved in a dispute between neighbors over ingress/egress issues, have arrested one neighbor and not the other, and have been sued after the neighbor who was arrested was found to be innocent of the charges brought against him/her. See Grassilli v. Rodriguez, Case No. 06cv0047 BTM(BLM).

on her claims premised on false arrest and violation of the Fourth Amendment. Therefore, the Court **GRANTS** Matzkiw's motion for summary judgment as to Mrs. Eppel's § 1983 false arrest claim, state false arrest claim, negligence claim, and claim for violation of California Civil Code § 52.1.

B.      Monell Claim

The Court grants summary judgment on Mr. and Mrs. Eppel's Monell claims because they have not raised a triable issue as to the existence of an underlying constitutional violation. The Court also grants summary judgment on this claim because Plaintiffs have not presented any evidence that the County had a policy or custom of condoning or tolerating unlawful arrests or that the County inadequately trained its officers.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' motion for summary judgment. The Clerk shall enter final judgment in favor of Defendants and against Plaintiffs on all claims.

**IT IS SO ORDERED.**

DATED: February 5, 2007

_Barry Ted Moskowitz_
Hon. Barry Ted Moskowitz
United States District Judge